The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioners Berger and the briefs and arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award except for minor modifications. The Full Commission therefore affirms the Opinion and Award of the Deputy Commissioner with minor modifications.
The Full Commission finds as fact and concludes as matters of law the following as:
 STIPULATIONS
1. The entire Industrial Commission file is received into evidence.
2. Records identified as the complete medical records from Dr. Smith were marked as stipulated exhibit 1 and received into evidence.
3. Records plaintiff identified that were not submitted to the Industrial Commission for consideration were marked as stipulated exhibit 2 and received into evidence.
 ***********
Based upon all of the competent evidence of record and reasonable inferences therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. On February 26, 1993, the Industrial Commission approved a Form 21 Agreement whereby the defendants agreed to pay temporary total disability compensation in the amount of $426.00 per week for necessary weeks for an injury to plaintiff's neck.
2. On January 6, 1998, Executive Secretary Tracey Weaver approved a Compromise Settlement Agreement entered into by the parties on December 31, 1997.
3. As a result of the terms of the Compromise Settlement Agreement, plaintiff knowingly and intelligently gave up his rights to make any further claims for compensation for his November 22, 1992 compensable injury by accident. Based upon the Full Commission's review of plaintiff's writing skills in correspondence contained in the evidentiary record, the Full Commission's observation of the plaintiff's ability to orally articulate himself and the express terms of the agreement itself, plaintiffs in court testimony that he did not realize that he could not receive additional benefits as a result of the agreement is found not to be credible.
4. At the time that the agreement was submitted to Executive Secretary Tracey Weaver for review, all of the medical records known to the defendants were not submitted for consideration. Progress notes by psychiatrist Michael Smith dated December 18, 1995, January 9, 1996, January 30, 1996, February 1, 1996, October 15, 1996, November 4, 1996, November 11, 1996, December 5, 1996, December 16, 1996, January 9, 1997, July 22, 1997, August 12, 1997, September 9, 1997, December 1, 1997, and December 30, 1997 were not submitted by the defendants. These notes were not prepared as a report to be presented to anyone. These notes reveal that plaintiff was stressed about his financial situation and his difficulty in coming to terms with the possibility that he would not be able to ever return to work. They also disclose that plaintiff was concerned that the defendant-carrier had not been willing to pay for the psychiatric treatment he was receiving and was relieved that the settlement agreement would resolve payment of this treatment.
5. A series of letters sent by Dr. Smith directly to the Industrial Commission were not included in the set of medical records submitted by the defendants at the time that the Compromise Settlement Agreement was sent to the Industrial Commission for consideration. The defendants knew about the existence of these letters at the time that the Compromise Settlement Agreement was sent. However, these letters were in the Industrial Commission file and were reviewed by Executive Secretary Tracey Weaver prior to her approval of the Compromise Settlement Agreement.
6. In a letter received by the Industrial Commission on November 15, 1996, Dr. Smith opined that plaintiff sustained emotional trauma as a result of the November 1992 compensable injury and that the plaintiff was permanently and totally disabled at that time. A copy of this letter was received by the defendants prior to the submission of the settlement agreement. This letter was reviewed and considered by Executive Secretary Tracey Weaver at the time that she approved the Compromise Settlement Agreement.
7. At the time of the approval of the Compromise Settlement Agreement, the defendants had not admitted that the depression that plaintiff had sustained was a result of the November 22, 1992 compensable injury by accident. The terms of the settlement agreement, itself, identified the psychiatric treatment received by the plaintiff as contested.
8. The Compromise Settlement Agreement contained language protecting plaintiff's ability to obtain Social Security Disability Compensation in addition to the lump sum he received under the Compromise Settlement Agreement.
9. As a result of the November 22, 1992 compensable injury by accident, plaintiff sustained an eleven percent permanent partial disability to his neck (back). On July 19, 1993, Dr. Talley released plaintiff to return to work with a restriction of no lifting more than fifteen pounds. Plaintiff was entitled to elect to receive permanent partial disability compensation for the permanent injury to his neck in the amount of $14,058.00. As a result of the Compromise Settlement Agreement, plaintiff received $143,300.00 — ten times the amount he would have received if he had elected to receive permanent partial disability compensation under N.C. Gen. Stat. § 97-31.
10. The Compromise Settlement Agreement approved by Executive Secretary Tracey Weaver was fair and equitable. Executive Secretary Tracey Weaver testified that at the time the Compromise Settlement Agreement was considered, she reviewed the complete Industrial Commission file and the medical records submitted by defendants. Such materials included the updated reports of November 15, 1996 and October 10, 1997 by Dr. Smith, opining that employee-plaintiff was in his opinion totally disabled as a result of pain and depression. Executive Secretary Weaver also testified that there were no noted concerns by herself or Special Deputy Commissioner Gina Cammarano, who initially reviewed the Compromise Settlement Agreement. After review of the missing handwritten notes of Dr. Smith, Secretary Weaver advised that those notes would not have changed her opinion, and would not have made a difference in the final approval of the clincher agreement.
11. There is insufficient evidence of record to support a finding that there was error by the Industrial Commission in approving the Compromise Settlement Agreement because of fraud, misrepresentation, undue influence or mutual mistake.
12. No evidence was presented that the Industrial Commission did not consider any medical or vocational reports known to the defendants at the time that the Compromise Settlement Agreement was reviewed and approved.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following
 CONCLUSIONS OF LAW
1. Section (3) under Rule 502 of the Workers' Compensation Rules of the North Carolina Industrial Commission require that "(a) 11 medical, vocational, and rehabilitation reports known to exist including but not limited to those pertinent to the employee's future earning capacity, must be submitted with the agreement to the Industrial Commission by the employer, the carrier/administrator, or the attorney for the employer." The missing progress notes written by Dr. Smith that were not submitted by the defendants with the Compromise Settlement Agreement were not "reports" within the meaning of Section 3 under rule 502. However, the letters written by Dr. Smith to the Industrial Commission were "reports" within the meaning of Section 3 under Rule 502. At the time that Executive Secretary Tracey Weaver reviewed the Compromise Settlement Agreement, she had available and did review the letters by Dr. Smith. Defendants did not need to send additional copies of these letters when they submitted the Compromise Settlement Agreement. Plaintiff has not shown by the greater weight of the evidence that there were reports known to the defendants that were not considered by Executive Secretary Tracey Weaver when she approved the Compromise Settlement Agreement.
2. Plaintiff has failed to show to the satisfaction of the Full Commission, that there was error by Executive Secretary Tracey Weaver in approving the Compromise Settlement Agreement because of fraud, misrepresentation, undue influence or mutual mistake. N.C. Gen. Stat.97-17.
3. This case is easily distinguishable from the Ratchford case.RATCHFORD, Employee, Plaintiff v. C.C. MANGUM, INC., Employer, ST. PAULFIRE MARINE INSURANCE CO., Carrier, Defendants. (I.C. NO. 585911, filed July 2, 1999). In Ratchford, defendants admitted failing to provide necessary records to the Industrial Commission at the time the clincher agreement was submitted for approval. They withheld rehabilitation reports from the carrier's rehabilitation nurse, concealed evidence of rejection of the job descriptions by plaintiffs treating physician until they were modified and did not even submit information documenting the fact that the job descriptions had been substantially modified because of plaintiff's severe injury. In the case now before the Full Commission for decision, Executive Secretary Weaver had all of the material and relevant facts before her when she made the decision approving the compromise settlement agreement. The agreement thus was not voidable under N.C. Gen. Stat. § 97-17 and case law interpreting that statutory provision. Additionally, in Ratchford the Special Deputy Commissioner who approved the Settlement Agreement testified that he would not have approved it had the missing documents been in the file. Here, the Executive Secretary testified she would have approved the Settlement Agreement if the "missing" notes had been in the file.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiffs motion to set aside the Compromise Settlement Agreement in this matter must be and is HEREBY DENIED.
2. Each side shall pay its own costs.
This 19th day of December 2001.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER